with us, Judge Timothy Corrigan of the Middle District of Florida. He is a graduate of Duke Law School, was appointed to the District Court bench in the early 2000s, served as Chief Judge of the Middle District of Florida until recently. He's been here with us before and we're glad that he's here again to help us with our cases. Hopefully you're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, then just keep going. You'll be on our time and not yours. We may take a break after the second set of consolidated cases, but we'll let you know as we go forward. Our first case this morning is number 24-10938, United States v. Hassan Jones. Ms. Rogers. Good morning. May it please the Court. I'm Assistant Federal Defender Kristen Rogers, representing the defendant appellant in this appeal, Mr. Hassan Jones. My client has asked this Court to reverse his convictions for marijuana trafficking and firearm possession. Several trial errors violated his substantial rights and resulted in an unfair trial, including introduction of highly inflammatory rap music video evidence and two instances of prosecutorial misconduct. He also challenges the sufficiency of the evidence, supporting a 924C conviction that mandated a 30-year consecutive sentence in his case. Over Mr. Jones' objections, under Federal Rules of Evidence 401 and 403, the District of Columbia filed a complaint with the District Attorney's Office, claiming that the evidence was irrelevant because it was fictional, professionally produced music videos that bore disclaimers regarding their authenticity and the endorsement of the behavior depicted in the videos. Was there any testimony about the fictional nature of the videos or just the videos themselves? They were just the videos themselves. Couldn't a reasonable jury, on the relevance point, I mean I understand your 403 argument as well, but on the relevance point, couldn't a reasonable juror just looking at the face of the videos within their four corners have deemed them relevant and thought that some of them may not have been fictional representations? I think guns, drugs, and cash are common motifs in rap music and that people who listen to and enjoy rap music understand that those are common motifs and are not necessarily autobiographical. I agree with that, that they're not necessarily autobiographical, but they may be. And we've had, at least I've had some cases in the past, both as a district judge and as a circuit judge, where some of those videos were not fictional but were representative of what was going on in real life and in real time. I guess my question is whether or not it was appropriate to think that the jury could decide for itself whether or not these were fictional or not. I think the really important point on this issue in the case is the lack of specificity in these rap music videos regarding the actual charges in the indictment. These videos did not show the guns that were charged in the indictment. They did not give us any specific information about the charges in the indictment in this case. The government argued that they were uploaded to YouTube during the pendency of this conspiracy. However, we don't know when they were made. We don't know when the songs were written. And I think that's what distinguishes this case from other cases in which this court has affirmed admission of rap music videos. In those cases, it wasn't just the defendant in the video singing. It was the defendant holding the precise gun that was charged in the indictment. It was the defendant standing in a precise location that was important in the crime that was charged in the indictment. In one case, it was the actual video that the defendant had showed the victim of the charged crime. And there was none of that in this case. And in this case, the evidence had a very high likelihood of the jury just using it as bad character evidence because it showed sort of a general criminal propensity as opposed to making it more likely that the defendant committed the charged offenses. Can you comment while you're on the rap video issue on the potential harmlessness of the violation? Right. The government, of course, has the burden of proof this was a preserved error. I think the government conceded the possibility of the unfair prejudice in this case when they agreed to introduce still photos from these videos as opposed to introducing the bulk of the videos themselves. Of course, they did go ahead and show one of these videos to the jury. That was the video in Exhibit 5i, and that is the same video as the still photos in Exhibit 18i. Also, I included all of the still images that they introduced in the appendix in this case so the court could really see how much the volume of the evidence in this case. They didn't just choose like one still photo of the defendant holding a gun. They showed just, I mean, the bulk of the first volume of the appendix are these photos. So it really became a feature of this trial. But I guess the question I have in mind is that there's plenty of evidence in the record, videos aside, that your client possessed guns and these guns, right? And that goes to the cumulative nature of the evidence. This evidence also did not do any unique work in the government's case because the government had other photos of the defendant holding guns, not the charged guns, but guns. And so this evidence really added nothing, added no new component, no unique work to the evidence presented in this case. Now, as for the prosecutorial misconduct issues, I don't think there's any real argument that these weren't plain errors. I think the argument really is whether it violated the defendant's substantial rights in this case. It is plain Doyle error to even attempt to comment on a defendant's post-Miranda silence. But sometimes lawyers decide that they are going to let errors or mistakes go by because they're not really germane to the issues. They want to focus on something else. They don't want the jury to harp on X or Y. And here we have an answer by the witness on a general question that didn't ask about the post-Miranda silence expressly, right? That was the first comment.  Okay. And then we have a direct question about it. And then there were no objections to either one. The judge may have been able to cure those with some sort of instruction. So why should we correct the error? I think that was a mistake by trial counsel. I think he just missed the issue. Why you should correct it is because it's a constitutional error. You can't tell a defendant that he has a constitutional right to remain silent and then use that silence against him. The court has warned prosecutors about this many times. There's really no excuse for a trained and experienced law enforcement witness and a trained and experienced prosecutor to draw attention to a defendant's post-Miranda silence in trial in front of a jury. Isn't this case, though, almost just like this case Miller that we've got where we held that an almost identical violation was harmless where there were just two questions. One of them wasn't answered. Prosecutor didn't tarry on the issue. Defendant didn't testify. Like all of that stuff that's here. Miller was actually my case.  I think, no, I think the error here is more egregious. I think in this case, because the questions immediately followed questions about that Glock 23 gun, which is the basis of our sufficiency of the evidence argument, I think there was a higher likelihood of prejudice in this case. As for the second argument regarding prosecutorial misconduct, it's axiomatic that a prosecutor can't comment on evidence that was not admitted at trial. That is plain error. Again, the real question is substantial rights. Here, it was a highly prejudicial error by the prosecutor. It covers two pages of the transcript in the closing argument. The prosecutor argued that it was both an admission and that it was all the jury needed to know in order to convict the defendant on count three of the indictment. This is not the kind of comment that can be cured by jury instructions regarding lawyer arguments not being evidence, because this was not a mere mischaracterization of the evidence. This was giving the jury evidence that they otherwise would not have heard, and you can't unring that bell. Do you think it's possible that this might be error, plain error, with respect to count three, but not with respect to count two? It seems to me that the comment on the extra record evidence was worse with respect to count three, and count three seems to me to be, frankly, a weaker case than count two. So is it possible that it might be yes as to one and no as to the other? It's possible. I do think—I mean, obviously, we've primarily attacked the conviction on count three in this case. We did not challenge the other counts on sufficiency of the evidence, just because the standard of review is so onerous on appeal, and I didn't think those would be winnable arguments. However, I do not think this was a slam-dunk case for the government. The jury came back with two questions after they were instructed, which usually indicates that they do have some doubt, and also there was an issue as to whether other people used the cell phones in this case, from which all of the evidence came. Just about all of the evidence, other than the physical evidence in this case, were extractions from my client's cell phones, and we know that other people use those phones. So yes, I agree that the prejudice argument is stronger as to count three, but I'm not going to concede that it's weak on the other counts either. Can I ask you another question about count three? The objection or the motion for judgment of acquittal did not specifically raise the issue that you're now asserting on appeal. The government says that means it's a plain error review. You say it's not. Can you comment on that and what the cases tell us about that? Yes. Thank you for asking that question. I saw the Buchanan case that came out last night at 6 o'clock. Thank you for that. I have noticed that this has been an issue that the court has sort of been tiptoeing around in cases for about the last decade. The general rule is, and that's how I was taught in law school, that's how I've been taught at every CLE I've been to since then, is that a general objection to the sufficiency of the evidence preserves all sufficiency issues under Rule 29. This is because Rule 29, on its face, does not require counsel to state grounds. Isn't it a little different here, though, because you kind of started with general but then you moved to specific? Maybe this gets at Judge Corrigan's question. You sort of started with an on-all counts objection, but then as you moved to count three, it seemed to me that the objection was, hey, there wasn't sufficient proof that it was marijuana, not that there was insufficient proof that it was in furtherance of, which is the argument you're now making. So there's sort of a corollary to the rule that if you only state specific objections, then you forfeit all other objections. In this case, it was trial counsel's intent to make a broad general objection, and then follow that up with some specific arguments. Now, this is how, I mean, I'm an appellate lawyer. This is how I've told the trial lawyers in my office to preserve sufficiency claims. That is because the rule doesn't require you to state grounds, but also it gives your appellate counsel and the appellate court a little space to maybe disagree with the trial lawyer's characterization or assessment of the evidence. Now, at least eight, by my count, at least eight circuit courts have held that general objections do preserve all sufficiency claims. And many of those circuits have also held that a general objection, followed by specific objections, will preserve the full range of sufficiency claims. We've reserved on that issue, right? Sir? We've reserved on the issue of whether or not a general no reasons given Rule 29 motion preserves everything. I see I'm about to run out of time. Can I continue? Yes, please go ahead, and I'll give you some time to wrap up. You have, and I think that's actually problematic in terms of teaching trial lawyers what exactly they need to say in order to preserve sufficiency claims in the district court. In this case, if I could say that I think the way the district court received this objection, in this case, is he received it as a broad general objection. If you look at his ruling on the record at trial, he rules first on the broad general objection, and then he follows up by addressing the specific arguments that trial counsel made. And then if you look at the order on jury trial, which is document 84 in the appendix, he also rules on the broad general objection. Thank you. This is just a comment. You don't have to respond. But part of the problem of making a general Rule 29 argument without specifics is that although it may preserve a range of appellate arguments to make, it doesn't really help you much with a trial judge who isn't really getting much guidance as to why it is that a certain claim fails for lack of sufficient evidence. You know, if you have a four-count indictment, as I think this one was three counts, right? No, this was four. So four for five-count indictment, and the lawyer gets up and says, Judge, we moved for Rule 29 judgment of acquittal on all counts. Government's evidence was insufficient across the board. Says nothing else. The judge is left without much assistance in terms of figuring out where the gaps are, like which element of count two was missing. How did the government misstep on count four and all of that? So it's a problem, and I think we're going to have to figure out where the balance is. I agree, and can I make one comment on that?  That's why I think allowing counsel to make a general objection followed by specific arguments is the best compromise on this issue because it really does both what the rule requires, but then helps the trial judge make the right decision during the trial. All right, thank you very much. You've saved your time for rebuttal. Okay, Ms. Tripp. Good morning, and may it please the Court. Marjorie Vincent Tripp, appearing on behalf of the United States. The primary underlying issue in this appeal is whether there was a sufficient nexus between the firearms and the drug trafficking crimes charged in the superseding indictment. The evidence was sufficient to support that element, and in addition, the defendant received a fundamentally fair trial, and in that respect, this Court should affirm. I'd like to begin by addressing the standard of review for the first issue, which is the judgment of acquittal, and our position is that the specific objection that was made in this case is the only one that was preserved for appeal, and to the point as to whether plain error should apply or not apply, Judge Jordan, you made an excellent point, and that is the reason the plain error rule exists is to encourage contemporaneous objections in the district court, and in allowing for contemporaneous objections, that gives the government an opportunity to address the specific issue that was raised, and it also gives the district court the opportunity to address those specific concerns and then rule on those specific concerns, and therefore we have a proper record to present to the appellate court. I know, but every once in a while, if we reverse on plain error grounds after saying something is wrong over and over and over again, and then you finally get a reversal on plain error grounds, maybe that will hit home, because I understand that the first general question under our precedent may not have been a Doyle violation or may not have been a prejudicial Doyle violation because the question didn't ask about pre-Miranda, post-Miranda silence. The witness gave the answer, it just went off, and that was it. I think if you had that, you'd be on pretty safe ground. But then the prosecutor specifically asks about the invocation of Miranda rights. What is going on? I will answer that question. I want to clarify, though, the plain error standard was referencing the first issue raised, but I will address the Fifth Amendment argument. Well, the plain error applies to both Miranda and to the reference to the nonexisting exhibit, but, like, why shouldn't we just reverse? Why shouldn't we say that this affected, at the very least, count three, which is, I think, I agree with Judge Newsom's characterization that it is not the stronger of the counts evidentiary-wise. Why shouldn't we just say, okay, you keep doing this, you're going to get a reversal on plain error grounds. Do what you want to do. Well, two points, Your Honor. The first one being that the district court did give clear instructions to the jury in this case. The district court, first of all, told the jurors that they could not consider the statements by the attorneys or the questions asked by the attorneys as evidence in the case. They could only consider the evidence that was admitted. I know, but the witness, forget the lawyer, the witness twice told the jury about post-Miranda silence. The jury was able to consider that, right? They did hear that, Your Honor, correct. But in that context, the court should look at the context in which the statement was made and, from that perspective, determine how the jury might have understood it. So as Your Honor referenced earlier, the question, the remark specifically about the Fifth Amendment invocation, was part of an open-ended response. And the specific question by the prosecutor was, what was your process in obtaining a DNA sample? So he began explaining the steps to obtaining that DNA sample, and the part with the Fifth Amendment right to comment was part of that journey to getting the DNA sample. Right, that's question one. I get that. Correct. Justify question two for me. Well, I don't know that there's a justification. I can't explain why the prosecutor asked that question, Your Honor. But I do believe that the jury instruction did mitigate any potential prejudice in this case because the judge also instructed the jury that the defendant had a right to remain silent and that his silence could not be used against him in any way. So a reasonable juror would look at those instructions and say, you know, we can't hold the fact that this particular defendant invoked his rights against him in determining his guilt. Are you saying that Doyle error is always cured by jury instructions that are given in every case, so you can't really have a Doyle error because it can be cured by the jury instructions? No, Your Honor, that would not be the case at all. But in this particular case, when you combine the jury instructions that were given and the strength of the government's case against the defendant, in that perspective, it really is not an error that would prejudicially affect the defendant's substantial rights. Or in other words, an error that but for that error, the jury would not have found the defendant guilty. Can you talk to me about the prosecutor's comment on the nonexistent evidence? I think that's the worst piece of this case for you. Well, Exhibit 19Z, it should not have been mentioned. Flat out, we're not going to deny that. However, again, two points with that particular exhibit. Number one is the district court instructed the jurors that they could only consider admitted evidence. So presumably since 19Z was not admitted, when the jury went back to the deliberation room, they didn't have that piece of evidence to consider. Do you know that? Do you know they didn't have it? I mean, how do you know? Because how do you know? Well, I'm going to— I mean, if the prosecutor's waving it around and then the prosecutor's saying, this is all you need to know to convict on this count, whether it was back there or it wasn't, and we don't really know, you know, that's pretty powerful, isn't it? Because isn't the jury then permitted to take the prosecutor at their word? This is all I need to know. Well, again, going back to the jury instruction about the attorney's comments, but also the fact that when the prosecutor referenced 19Z, he went on to say that, but this is not the only piece of evidence. There's all this other evidence that you can consider on this particular case. But didn't the prosecutor, with respect to Count 3, only mention three pieces of hard evidence, one of which was 19Z, with respect to which they said, this is all you need to know? That might be true, Your Honor. However, when the jury went back to the deliberation rooms, they had the judge's instructions. They had the exhibits that were admitted. They knew what the elements of each offense was, so they were able to parse through. And, again, there were 107 exhibits that were admitted in this trial, and they had all that other evidence they consider in addition to the testimony of 11 witnesses. And 19Z was a small part of the closing argument. Well, I guess I'm suggesting, I'm not really sure it was that small, if the prosecutor, and you can correct me if I'm wrong, but I think, by my count, the prosecutor only mentioned three pieces of hard evidence in the closing with respect to Count 3. So it seems to me that in the prosecutor's mind, and thus by virtue of that presentation in the jury's mind, 19Z probably is going to loom pretty large. I would disagree, Your Honor, simply because, as I mentioned earlier, the prosecutor did say, you know, don't just look at this. Look at all this other evidence on this particular point. So the jury was aware that 19Z is one, potentially one piece of evidence, but the prosecutor did point to other evidence in support of that particular charge. So in that respect, I would say it was a very small part of the closing argument. They were not permitted to consider the statements by the attorneys as evidence. So in that respect, I don't believe that the defendant can meet the burden of showing any prejudice that substantially affected his rights. If you put that together with the Doyle violation, how close do you get to reversal? I don't believe we get very close, Your Honor, and this is why. My opponent counsel cited the Herbermann case in one of their briefs, and in that case, the prosecutor made numerous errors during that trial. Some of the evidentiary, sometimes she ignored motions in limine that the district court judge had ruled on, and these were errors that were persistent throughout the course of the trial, and as the decision explained, permeated the entire trial. That's not what we have in this case. We have potentially three instances of error that occurred, one of which we would disagree occurred at all, but three potential instances that this court might consider. But when you look at the cumulative impact in the context of the entire… But they were kind of big deals, right? I mean, a Doyle violation is a big deal. Arguing evidence to the jury that's not in evidence is a pretty big deal, especially when you emphasize it, and the videos we can talk about, but this wasn't just inconsequential, was it? Especially as to count three. Well, I don't want to use the phrase inconsequential, but in the scope of the entire two-day trial where we had more than 107 exhibits admitted, we had testimony of 11 witnesses. When you look at it within the scale of the trial, it's a minute portion of the trial compared to everything that went on over the course of two days. So maybe in the time you've got remaining, I might direct you back to where I think you might have wanted to start, but I want to pick up on the sort of the postscript to Judge Corrigan's question, which was especially as to count three, because I agree. I think count three is kind of like hanging by a thread here. I mean, it seems pretty weak sauce to me. Under a traditional sort of deferential standard that we give with respect to insufficiency claims, you might make it. But in my mind, you kind of like make it by the skin of your nose or is it skin of teeth or whatever it is. And that makes me wonder specifically about the reference to PZ19 with respect to count three, whether it doesn't affect substantial rights with respect to that. So with respect to count three, Your Honor, I would point to as far as the nexus between the firearms and the drug trafficking offenses, I would point specifically to a few exhibits that were admitted at trial properly. The first one was exhibit 19GG. And that exhibit was a photograph that was uploaded to Instagram on January 30th, I believe, of 2023, which was two days before the execution of the search warrant in Mobile. And in that photograph, I believe it was ATF Special Agent Suey that testified with respect to that photograph. And she believed that photograph was taken in the same location, same bathroom that a prior photograph of the defendant and his girlfriend was taken. But in that photograph, there is a firearm. There is also some marijuana on the counter. Was it a distribution amount of marijuana? It was in a baggie. So there was some marijuana on a counter, and then there was also some marijuana in a baggie. I mean, this was what kind of led me to wonder sort of whether count three is sort of insufficiently strong, is that you've got guns and you've got distribution amounts of marijuana, but I don't see them mixing very often. I see guns with little bits of marijuana and lots of marijuana without guns, but not guns with distribution amounts of marijuana. So in this specific circumstance, it's a little bit unusual compared to other drug trafficking cases that the court has seen where the drugs are found in the same location, whether it's in a vehicle or inside a residence. But the jury could reasonably have put these two together. Based on the photographs and evidence from the defendant's phones that showed drugs and firearms together, drugs and drug proceeds together, they could have reasonably assumed based on what they saw resulting from the search that those two went together. But more importantly, the connection between the two, the distribution amount of marijuana found in the trunk of the vehicle, the connection of the defendant to the car. He referenced one time to Raquel Edwards, his girlfriend, that he forgot his supply in his car and he needed her to bring it because he had someone waiting to buy it. The fact that the car keys were in the same apartment where the defendant was residing. The firearms themselves, when we look at the availability. Did the evidence establish whose car it was? I believe the evidence established that it was Raquel Edwards' car. And we know the defendant dealt drugs out of his vehicle because he told Raquel at one time he was sitting in his car trying to make some money. But with respect to connecting the firearms to the drug trafficking amount of marijuana found in the car, those firearms, as Agent Westphal testified, Glock switches are very common among drug traffickers and they go hand in hand because drug traffickers believe they're a better form of protection. This defendant constantly talked about his love of guns. He constantly talked about needing Glock switches throughout the course of the conspiracy. His possession of marijuana on February 1st, the date of the search, that possession was part of the broader conspiracy that was charged in Count 1. So the firearms, the jury could have reasonably concluded, also based on photographs, the screenshots from the YouTube videos that show not only Glock switches, but Agents who he testified, the Glock 22 that was seized during the search, she identified that particular firearm in the video. So when you have an individual who believes, who demonstrates that guns go with the drug trafficking that he's involved in, the jury could have readily made that connection between the drug distribution amount that's in the trunk and his readily available and accessible firearms that are available to fire. And this is a defendant, in addition, who recognizes and made a comment about quote unquote glizzies and you don't even have to aim, you just fire. So the jury, considering not only this testimony and evidence, but all the other evidence available, they could have reasonably found that nexus between the firearms and the drug trafficking crimes. But I do realize my time is expiring, Your Honor, and I will conclude with this. In this particular case, on one end of the spectrum of evidence, we have the Louisiana traffic stop. On the other end, we have the execution of the search warrant in Mobile, Alabama. The defendant, with his own words and with his own images, fills in the gaps in this entire story, and he did that for the jury himself. The evidence in this case was sufficient to support his guilt. He received a fundamentally fair trial, and in that respect, we would ask this court to affirm. Thank you. All right. Thank you very much. They didn't prove a 30-year 924c offense in this case. They didn't prove that my client ever drove that car that the drugs were found in. They maybe could have based on what the evidence they presented at the sufficiency, at the suppression hearing, but they didn't introduce any of that evidence during the trial. The jury never saw it. So the inferences are doing a lot of work in this case, and the inferences that the government wanted the jury to draw just aren't reasonable because they aren't supported by the evidence. I'd like to comment on the evidence that they didn't present in this case. They didn't present any controlled by evidence. There was no testimony from anyone who saw my client possessing firearms while selling drugs. There was no proximity between the drugs and the guns in this case, the guns that were charged in this case. There were no distribution quantity drugs found in the apartment where the guns were found. There was no cash found in the apartment where the guns were found. There was no evidence that drugs had ever been dealt from that apartment. The time and circumstances of the search don't support a conviction on count three. My client was asleep with his girlfriend and their infant child and his girlfriend's parents inside the apartment at 5.45 a.m. when the police came in and they found those firearms. Was the drug-trafficking crime charged in count three the conspiracy or the possession or both? Count three was the 924C. Right, but it has to be in relation to a drug-trafficking crime, right? So is a drug-trafficking crime as charged in the indictment the conspiracy charge in count one?  The possession charge in count two or both? Both. It was premised on both. My colleague referenced Exhibit 19GG specifically. That does not show a distribution quantity of drugs. None of the pictures show firearms with a distribution quantity of drugs. We know my client used marijuana. He talked about it frequently. So that just doesn't support the in-furtherance element of the 924C charge. Finally, just as sort of my backup argument on the preservation of the 924C issue, is that in the mine run of cases, the plain error standard and the sufficiency standard are going to get you to the same place. If you can make a successful sufficiency claim on appeal, that's going to satisfy the plain error standard almost always. And it certainly does in this case where my client received a 30-year mandatory consecutive sentence for possessing that firearm. Thank you. Thank you both very much. Okay. Come on up.